IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| THOMAS S. GDOVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CV-05107-BCW |
| | ) | |
| SCHNEIDER ELECTRIC USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. #82) and Defendant's Motion for Summary Judgment (Doc. #88). For the following reasons, the Court denies both motions.

### I. FACTUAL BACKGROUND[1]

Plaintiff is the owner and operator of a hotel in Branson, Missouri ("the Hotel"). The Hotel normally receives electrical power from the local utility company. Occasionally, however, the Hotel draws power from a permanently installed standby generator. The Hotel uses Defendant's Square D Power-Zone switch assembly to change the power source from the utility company to the generator and vice versa.

Plaintiff contracted with Cummins Central Power ("Cummins") to maintain the generator. On July 17, 2009, Cummins serviced the generator but could not get it to start because of an issue with the circuit breaker. Plaintiff subsequently followed up with Cummins about repairing the circuit breaker but nothing was done.

---

[1] The following facts are properly supported and not genuinely disputed. Additional undisputed facts are included as necessary throughout this order. The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

1

On December 7, 2009, Plaintiff decided the generator needed to be ready to run for the coming winter months. He opened the generator to get the model number of the circuit breaker so he could order a new one. Plaintiff removed the metal cover and the molded plastic cover from the circuit breaker. He also removed a piece of metal debris that he thought was obstructing operation of the circuit breaker. After removing the metal piece, Plaintiff tried the circuit breaker. It would not engage. He tried again, and an arc flash explosion occurred. The explosion burned Plaintiff.

Plaintiff filed this lawsuit on October 25, 2012. He alleges two strict-liability claims under Missouri law. Defendant denies liability and asserts several affirmative defenses. Defendant moves for summary judgment on both claims, and Plaintiff moves for partial summary judgment on Defendant's affirmative defenses.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the initial burden of showing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rational trier of fact could find for it. Id.

## III. ANALYSIS

### A. Burden of Proof

The principal dispute between the parties is the allocation of the burden of proof on various matters. The Court addresses this issue before resolving the specific arguments in each

motion. Plaintiff asserts state-law claims for strict liability-product defect and strict liability-failure to warn. The Eighth Circuit has explained that:

> Under Missouri law, the requirements of a strict liability defective-product claim are: (1) the defendant sold the product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the user was damaged as a direct result of the product.

DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 824 (8th Cir. 2009).

The Eighth Circuit also stated that:

> Under Missouri law, the requirements for a strict liability failure-to-warn claim are: (1) the defendant sold the product in the course of its business; (2) the product was unreasonably dangerous at the time of the sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give an adequate warning of the danger; (4) the product was used in a manner reasonably anticipated; and (5) the user was damaged as a direct result of the product.

Id. Plaintiff has the burden of establishing these elements.

Defendant asserts various defenses. Some of Defendant's defenses are ones of a general denial, so the burden of proof remains with Plaintiff. Several of these general defenses are discussed in more detail below. Defendant also asserts a state-of-the-art defense and a comparative-fault defense. By statute, these are affirmative defenses for which Defendant has the burden of proof. See R.S.Mo. 537.764 (explaining the state of the art shall be a complete defense and shall be pleaded as an affirmative defense); R.S.Mo 537.765 (allowing the defendant to prove the fault of the plaintiff as an affirmative defense).

### B. **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment and raises three arguments. Two arguments challenge both claims, and the final argument only challenges the strict liability-failure to warn claim. Defendant first argues it is entitled to summary judgment on both claims because Plaintiff

3

cannot establish Defendant's conduct caused his injury.  Defendant contends Plaintiff's injuries were caused by Plaintiff disassembling the circuit breaker and/or by Cummins failing to clean and lubricate the switch.  Plaintiff responds that Defendant confuses causation with comparative fault and that, regardless, he has sufficient evidence to survive summary judgment.

For both claims, Plaintiff must establish that he was injured as a "direct result" of the product.  This causation element requires Plaintiff to show the product is the proximate cause of his injuries.  See Gray v. Cottrell, Inc., No. 4:05-CV-1852, 2007 WL 2735685, at *2 (E.D. Mo. Sept. 18, 2007) ("[P]laintiff must prove by a preponderance of the evidence that the claimed defect was the proximate cause of his injury.").  In other words, Plaintiff must demonstrate that it is more probable than not that his injury was caused by a product defect and not some intervening event.  Id.

Defendant's first asserts Plaintiff cannot prove this element because Plaintiff disassembling the circuit breaker and Cummins failing to clean the switch are both intervening events that break the causal chain.[2]  Plaintiff responds that the switch defect allowed electricity to travel into the generator and caused the arc flash that injured him.  Plaintiff also contends the switch performed without incident for 20 years despite the lack of maintenance.  Based on this record, the Court finds there is a genuine dispute as to whether Plaintiff was damaged as a "direct result" of the product and, therefore, denies summary judgment.[3]

Defendant next argues summary judgment on both claims is warranted because Plaintiff lacks evidence of a specific defect in the switch and evidence that, at the time of the accident, the switch was in substantially the same condition as when it left Defendant's control.  These

---

[2] This argument is one of general denial, so the burden of proof remains with Plaintiff.

[3] At one point, Plaintiff suggests he only needs to establish "but for" causation to satisfy this element.  See Doc. #101 at 33.  The Court disagrees.  Proximate cause is separate from "but for" cause.  See Zellmer et al., Products Liability, MoBarCLE, 3 ed., vol. II, chap. 14 (discussing relationship between proximate and factual causation).

4

arguments raise issues of general denial because Plaintiff must demonstrate a product defect and that the defect existed at the time the product left Defendant's possession and caused Plaintiff's injury.  See, e.g., Waggoner by Waggoner v. Mercedez Benz of N. Am., Inc., 879 S.W.2d 692, 695 (Mo. Ct. App. 1994) (requiring the plaintiffs to produce evidence that the product had not been altered in a way that would create the defect).

Plaintiff responds with the expert testimony of Gregory Booth.  Mr. Booth identifies at least five defects that could cause electricity to travel to the generator.  Plaintiff also offers evidence that the switch performed without incident for 20 years despite the lack of maintenance, that maintenance personnel were told at the time of installation that no maintenance was required, and that Defendant's employee is aware of multiple occasions where a switch does not properly release.  Based on this response, the Court finds genuine disputes of material fact preclude summary judgment.

Defendant's final argument is that summary judgment is warranted on the strict liability-failure to warn claim because Plaintiff is unable to establish that he would have heeded any different warnings on the switch.  This argument again challenges causation because Plaintiff must demonstrate that a warning would have altered his behavior.  See DG&G, 576 F.3d at 824 (explaining that causation for a strict liability-failure to warn claim requires the plaintiff to show a warning would have altered his behavior).  Defendant contends Plaintiff cannot make this showing because Plaintiff admits Defendant was not his source of safety information and admits he did not approach the switch on the date of the accident.

Plaintiff responds that Defendant sent out a letter with a label kit in 2007.  Plaintiff explains the letter contained warnings that annual maintenance was critical and cautioned users that the hazard of serious injury or death could occur when interrupter blades within the switch

stick.  Plaintiff also contends Defendant did not send this letter to Plaintiff or to anyone else at the Hotel.  Finally, Plaintiff and the other operator of the switch both testified that they would have heeded the warning Defendant distributed in 2007 if they had received it.  For these reasons, the Court finds genuine issues of material fact preclude summary judgment.  For all of these reasons, Defendant's motion for summary judgment is denied.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff's motion seeks summary judgment on Defendant's comparative-fault and state-of-the-art affirmative defenses.  Plaintiff initially moves for summary judgment on the comparative-fault affirmative defense.  Plaintiff explains that the statute provides an affirmative defense based on the "fault" of the plaintiff.  R.S.Mo. 537.765.  The term fault is limited to six circumstances involving "use" of the "product."  Id.  Plaintiff contends summary judgment is warranted because he was using the generator and/or the circuit breaker—but not the switch—at the time of the accident.

The Court finds Plaintiff's argument unpersuasive.  As previously discussed, Plaintiff has the fundamental burden of proving causation.  This burden requires Plaintiff to demonstrate that intervening events (e.g., his conduct, Cummins's conduct) did not break the causal chain.  He cannot completely avoid this burden by repackaging all of Defendant's causation arguments as affirmative defenses.  Plaintiff must prove his claims; Defendant must prove its affirmative defenses.

Regardless of the burden issue, the Court additionally finds summary judgment is not appropriate because there is a genuine dispute regarding whether Plaintiff, by working on the generator and/or circuit breaker connected to the switch, became a "user" of the switch.  See Thornton v. Gray Auto. Parts Co., 62 S.W.3d 575, 583 (Mo. Ct. App. 2001) (agreeing that

whether the plaintiff was a "user" of the product was a jury question). Defendant provides evidence that the switch is not a stand-alone product and is always incorporated into an electrical system. Based on this evidence, the question of whether Plaintiff was a "user" of the switch is best decided by a jury.

Plaintiff next argues summary judgment is warranted on the state-of-the-art affirmative defense because the uncontroverted evidence establishes Defendant knew of the dangers in the switch at the time of sale. In response, Defendant identifies numerous disputes of material fact. Defendant argues there is no evidence that it had notice of any real-world, in-use instances of this type of failure before the switch was sold. Defendant also contends that Plaintiff mischaracterizes the nature and result of laboratory testing and fails to link any of the "laboratory created" failures to any alleged defect. Based on this record, the Court finds summary judgment is not appropriate. For all of these reasons, Plaintiff's motion for summary judgment is denied.

## IV.    CONCLUSION

The Court carefully considered the record and briefs and finds genuine issues of material fact remain in dispute. Accordingly, it is hereby

ORDERDED Plaintiff's Motion for Partial Summary Judgment (Doc. #82) is DENIED. It is further

ORDERED Defendant's Motion for Summary Judgment (Doc. #88) is DENIED.

IT IS SO ORDERED.

DATED: <u>April 25, 2014</u>

/s/ Brian C. Wimes<br>
JUDGE BRIAN C. WIMES<br>
UNITED STATES DISTRICT COURT